# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TANNETT WASHINGTON, | ) |
|                Plaintiff, | ) |
| v. | ) Case No. 4:20-00974-CV-RK |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) |
|                Defendant. | ) |

## ORDER

Before the Court is Defendant Federal National Mortgage Association's ("Fannie Mae") motion to dismiss. The motion is fully briefed. (Docs. 5, 6, 10, 11.) After careful consideration, the motion is **DENIED**.

## I. BACKGROUND

### A. Underlying Lawsuit

Plaintiff, Tannett Washington, is an individual and resident of 11442 Blue Ridge Blvd., #80, Kansas City, Missouri, County of Jackson.

Plaintiff was a tenant at Ruskin Place Apartments ("Apartments"). KM-T.E.H. Realty 8, LLC ("KM-T.E.H.") owned the Apartments. KM-T.E.H. had an outstanding multifamily mortgage loan on the Apartments that was federally backed by Fannie Mae. The Apartments fell into disrepair. A class action lawsuit was filed, with Plaintiff as a Class Representative, against KM-T.E.H. and Ruskin Place Apartments (collectively "the KM-T.E.H. Defendants") in the Circuit Court of Jackson County, Missouri, at Kansas City, Division 9, Case No. 1916-CV29273, *Ana Fuentes, et al. v. KM-T.E.H. Realty 8, LLC, et al*.

On March 12, 2020, the Fuentes plaintiffs and Class Representatives and KM-T.E.H. Defendants entered into an agreed contract whereby (1) the KM-T.E.H. Defendants would place $249,613.37 in the Court's escrow account for the sole benefit of the plaintiff class within five days of the Order, (2) funds shall be subject to the control of the Court and shall be used only for the costs of approved apartment repairs, cash payments to class members, or class counsel's attorney's fees and case expenses, (3) any applications for distribution of the funds or a portion of the funds may be made by written motion to the Court, and (4) as a condition of the agreement,

the Court will strike and release the two Notices of Lis Pendens recorded by the plaintiffs, Class Representatives, and Class Members.

On March 12, 2020, the Fuentes Plaintiffs and KM-T.E.H. Defendants memorialized their agreement into a pleading titled: "Joint Motion for Deposit of Funds" and emailed Division 9 their Joint Motion for Deposit of Funds. The Joint Motion for Deposit of Funds stated the "funds shall be subject to the control of the Court and shall be used only for the costs of approved apartment repairs, cash payments to class members, or class counsel's attorney's fees and case expenses."

On March 12, 2020, Judge Fahnestock granted the Parties' Joint Motion for Deposit of Funds into the Circuit Court Escrow Account and ordered the KM-T.E.H. Defendants to "place $249,613.37 in the Court's escrow account for the sole benefit of the plaintiff class within five (5) days of this Order." The deadline for the KM-T.E.H. Defendants to place $249,613.37 into the Court's escrow account was March 17, 2020.

Plaintiff's alleges Fannie Mae was aware and had full knowledge of the contract between the KM-T.E.H. Defendants and the Fuentes Plaintiffs and Class Representatives. The closing and sale of the Ruskin Place Apartments was scheduled for March 13, 2020, between seller KM-T.E.H. and buyer Ruskin Apartments, LLC. The closing did not occur on March 13, 2020.

The seller KM-T.E.H. and buyer Ruskin Apartments, LLC attempted to close on the sale of Ruskin Place Apartments on March 16 and 17, 2020. The seller KM-T.E.H. and buyer Ruskin Apartments, LLC executed all necessary closing documents, the lender approved the sale, the lender approved the settlement statement, and the buyer Ruskin Apartments, LLC wired the funds. However, the sale did not take place. Thereafter, Defendant successfully sought an appointment of Receiver for KM-T.E.H., and foreclosed. The Apartments were then sold in a trustee's sale.

**B.    Current Lawsuit**

Defendant Fannie Mae is a United States Government-sponsored enterprise under the conservatorship of the Federal Housing Financing Agency. Plaintiff brings this lawsuit against Fannie Mae for tortious interference with a contract Plaintiff had with KM-T.E.H and for declaratory judgment that Fannie Mae violated the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). *See* 15 U.S.C. § 9057 (enacted March 27, 2020). Plaintiff claims Fannie Mae violated the newly enacted CARES Act when it foreclosed on KM-T.E.H. Plaintiff's theory is Defendant was prohibited from foreclosing on KM-T.E.H once KM-T.E.H lodged a

"request pursuant [to the] CARES Act, for a 30[-]day forbearance due to a financial hardship as a direct result of the COVID-19 emergency."

Plaintiff alleges Fannie Mae was aware and had full knowledge of the attempted closings on Ruskin Place Apartments. That is because KM-T.E.H. had entered into a forbearance agreement with Fannie Mae on or about February 3, 2020. Pursuant to the forbearance agreement, KM-T.E.H. caused Lexington Realty Trust Company, LLC to wire transfer $398,879.83 on January 28, 2020, for the benefit of Fannie Mae.

In consideration of the $398,879.83 wire transfer, Fannie Mae agreed to forbear from exercising its legal and equitable remedies under the KM-T.E.H. loan documents until March 15, 2020.

On March 13, 2020, a national emergency to combat the coronavirus pandemic was declared. In response, the federal government enacted the CARES Act on March 27, 2020. The CARES Act provides emergency assistance and health care response for individuals, families, and businesses affected by the 2020 coronavirus pandemic. The CARES Act contains several protective provisions providing assistance for multifamily borrowers of Federally backed mortgage loans. 15 U.S.C. § 9057.[1]

---

[1] Section 9057 of the CARES Act provides:

(a) IN GENERAL. During the covered period, a multifamily borrower with a Federally backed multifamily mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID-19 emergency may request a forbearance under the terms set forth in this section.
(b) REQUEST FOR RELIEF. A multifamily borrower with a Federally backed multifamily mortgage loan that was current on its payments as of February 1, 2020, may submit an oral or written request for forbearance under subsection (a) to the borrower's servicer affirming that the multifamily borrower is experiencing a financial hardship during the COVID-19 emergency.
(c) FORBEARANCE PERIOD. [ .] Upon receipt of an oral or written request for forbearance from a multifamily borrower, a servicer shall:
    (A) document the financial hardship;
    (B) provide the forbearance for up to 30 days; and
    (C) extend the forbearance for up to 2 additional 30-day periods upon the request of the borrower provided that, the borrower's request for an extension is made during the covered period, and, at least 15 days prior to the end of the forbearance period described under subparagraph (B).

3

In that vein, on March 28, 2020, the law firm retained by Fannie Mae, Stinson LLP, published on its website under "News & Insights" an alert titled: "Updated: COVID-19 Related Moratorium on Foreclosures and Evictions" citing the mandatory language of the CARES Act:

> Section [9057] applies to multi-family loans with borrowers who attest – and can document – that they are experiencing hardship due to COVID-19. A multi-family borrower is a borrower of a mortgage loan secured by a lien against a multifamily building with 5 or more dwelling units.
>
> Affected borrowers may request forbearance for one, 30-day period. Upon request, that period can be extended for two, additional 30-day periods.

KM-T.E.H. is a multifamily borrower with a federally backed (Fannie Mae) multifamily mortgage loan under the CARES Act. Plaintiff alleges that KM-T.E.H. was current "on its payments as of February 1, 2020."

On March 30, 2020, KM-T.E.H. requested, pursuant to § 9057 of the CARES Act, a thirty-day forbearance due to a financial hardship as a direct result of the COVID-19 emergency. Meanwhile, seller KM-T.E.H. and buyer Ruskin Apartments, LLC were ready, willing, and able to close on the Ruskin Place Apartments.

Although KM-T.E.H. requested in writing that Fannie Mae forbear from foreclosing pursuant to the CARES Act, Fannie Mae foreclosed on Ruskin Place Apartments on March 31, 2020. Plaintiff claims that but for Fannie Mae foreclosing on Ruskin Place Apartments, the $249,613.37 escrow proceeds would have been placed in the Circuit Court of Jackson County, Missouri's escrow account for the sole benefit of the Fuentes plaintiffs. As noted above, the $249,613.37 escrow proceeds were explicitly earmarked for the benefit of the Fuentes plaintiffs, including for necessary repairs or payments to the tenants of Ruskin Place Apartments. The Fuentes plaintiffs had a legal right to the $249,613.37 escrow proceeds in the event of a sale of Ruskin Place Apartments.

The crux of Plaintiff's complaint is that Fannie Mae intentionally interfered with the contract between the Fuentes plaintiffs and the KM-T.E.H. Defendants by foreclosing on Ruskin Place Apartments instead of providing KM-T.E.H. a forbearance for at least 30 days in order to complete the sale.

## II. STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed for "failure to state a claim upon which relief can be granted." A complaint must provide "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Generally, the Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, however. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint states a claim, the Court looks at two factors. First, the Court must identify the allegations that are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678. In other words, to state a claim, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 678. Second, the Court must determine whether the complaint states a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. This step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The Court must review the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether Plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 681-82.

### III. DISCUSSION

Defendant seeks dismissal on two grounds: (1) Defendant did not violate the CARES Act, and (2) Plaintiff lacks standing to assert that Defendant violated the CARES Act, because Section 4023 "only grants rights to borrowers, not tenants." (Doc. 11.)

Defendant attaches the following exhibits to the Memorandum of Law in Support of Motion to Dismiss (Doc. 6):

1. Fannie Mae's Objection dated March 31, 2020, to Plaintiff's motion for temporary restraining order seeking to enjoin the trustee's sale.
2. Judge Dale Youngs' Order dated March 20, 2020, appointing Trigild Inc. to be the general receiver of Borrower.
3. Borrowers multifamily mortgage loan note; deed of trust; assignment of leases and rents; security agreement; and fixture filing, for the purchase of the Apartments dated July 20, 2015.

5

4. "Notice of Demand for Cure" letter dated September 9, 2019, to Borrower from the servicer of the loan, Hunt Servicing Company (Servicer), demanding Borrower cure deficiencies in the condition of the Apartments and demanding Borrower deposit funds with the Servicer, on behalf of Fannie Mae, as additional security for the loan, and to cover a portion of the needed repairs. As part of this Demand Notice, a listing of the required repairs is attached.
5. "Notice of Acceleration of Indebtedness and Demand for Payment" letter dated November 26, 2019, from Fannie Mae to Borrower advising 1) Borrower failed to cure the deficiencies outlined in the Demand Notice, 2) failed to remit the demanded funds to Servicer, and 3) such failures constitutes an "Event of Default."
6. Forbearance Agreement dated February 3, 2020, between Fannie Mae and Borrower
7. "Notice of Default under Forbearance Agreement and Demand for Payment" letter dated March 6, 2020, to Borrower from Fannie Mae.

Defendant attaches the following exhibits to the Reply Memorandum in Support of Motion to Dismiss (Doc. 11):

1. Complete transcript of the March 31, 2020 hearing before Judge Dale Youngs on motion to stay trustee's sale of the Apartments.

Because standing is a threshold or jurisdictional issue, the Court addresses Defendant's claims out of order. *See Cook v. ACS State & Local Sols., Inc.*, 756 F.Supp.2d 1104, 1106 (W.D. Mo. 2010) (reasoning that standing is a jurisdictional issue—or a threshold issue—to be decided "before determining whether or not [p]laintiffs have stated a claim.").

### A. Whether Plaintiff has standing to assert its claims against Defendant

Because Plaintiff invokes diversity jurisdiction, she must establish standing under Article III of the United States Constitution, as well as Missouri state law. *Anderson v. Aramark Mgmt. Servs. Ltd. P'ship*, 4:16-CV-1700 (CEJ), 2017 WL 1477147, at *2 (E.D. Mo. Apr. 24, 2017) (citing *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1126 (8th Cir. 1998)). The doctrine of standing "requires federal courts to satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Id*. (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted)).

To satisfy the standing requirements of Article III, "a plaintiff must show (1) [they have] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not

6

Case 4:20-cv-00974-RK   Document 18   Filed 06/09/21   Page 6 of 9

conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Additionally, if Plaintiff cannot show she has standing to sue under Missouri law, then the federal court cannot hear the claim. *Anderson*, 2017 WL 1477147, at *2 (citing *Metro. Express Servs., Inc. v. City of Kansas City*, 23 F.3d 1367, 1369 (8th Cir. 1994)).[2]

Defendant contends Plaintiff lacks standing to bring this action for tortious interference and to attain a declaratory judgment that Defendant violated the CARES Act because only the borrower in the underlying real estate transaction, KM-T.E.H., could assert such a claim. Defendant continues, "The Loan Documents created loan obligations by and between Fannie Mae and the borrower only – Plaintiff cannot possibly be construed as a third[-] party beneficiary of these documents." Defendant further argues, "The Fuentes Class's agreement with the borrower may have fallen through as an unfortunate consequence of the Foreclosure Sale, but Plaintiff has no right to complain that the Foreclosure Sale violated the CARES Act." (Doc. 6 at 10.)

In response, Plaintiff argues that "at no point has Plaintiff ever claimed standing resulting from her status as a third-party beneficiary to the loan documents." (Doc. 10 at 6.) Liberally construing Plaintiff's complaint, as the Court must, Plaintiff is alleging tortious interference arising from Defendant's actions of foreclosing on a property in violation of the CARES Act and thereby interfering with the performance on an underlying contract between Plaintiff and KM-T.E.H. Simply put, Plaintiff is not claiming tortious interference with the contract created in the Loan Documents, but rather an interference with a contract in which the Plaintiff was a party. Under Missouri law, there must be an absence of justification for an act of interference to give rise to a

---

[2] The Court also notes that "to properly dismiss [a case] for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *S.J. v. Tidball*, No. 2:20-CV-04036-MDH, 2020 WL 5440510, at *2 (W.D. Mo. Sept. 10, 2020) (quoting *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993)). "The Eighth Circuit has explained that a 'court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Philadelphia Indem. Ins. Co. v. Atl. Specialty Ins. Co.*, No. 6:20-CV-03065-MDH, 2020 WL 4819949, at *1 (W.D. Mo. Aug. 19, 2020) (quoting *Osborn v. United States*, 918 F.2d 724, n.6 (8th Cir. 1990)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *S.J. v. Tidball*, 2020 WL 5440510, at *2. "In a factual attack the moving party submits evidentiary materials such as affidavits or depositions to attack the jurisdictional allegations of the complaint, and the court may consider that evidence when determining whether it has subject matter jurisdiction." *Philadelphia Indem. Ins. Co.*, 2020 WL 4819949, at *1 (citing *Titus*, 4 F.3d at 593). As discussed below, the Court is satisfied that Plaintiff has standing to bring the present claims.

tortious interference claim.  *Nazeri v. Mo. Valley College*, 860 S.W.2d 303, 316-17 (Mo. banc 1993); *see also Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. banc 2006).  At least as to Count I, any claim Plaintiff makes as to a violation of the CARES Act goes not to an independent cause of action, but rather to support the justification element of tortious interference.  Plaintiff has plausibly pleaded claims of interference resulting in injury to the Plaintiff, traceable to the actions (namely the foreclosure) of Fannie Mae, and can be adequately redressed by this Court.

Moreover, Defendant has not cited any case on point indicating that Plaintiff does not have standing to bring this case, and the general principles of standing, at least at the dismissal stage and on this record, support a finding of standing in favor of Plaintiff.  *See Rodeway Inns of Am., Inc. v. Frank*, 541 F.2d 759, 763 (8th Cir. 1976) (affirming district court's ruling that competitor hotels had standing to assert that defendants' conduct violated the National Housing Act, including HUD regulations and policy); *Sales Res., Inc. v. All. Foods, Inc.*, 4:08CV0732 TCM, 2009 WL 2382365, at *4 (E.D. Mo. July 30, 2009) (rejecting defendant's argument that plaintiff did not have standing to assert a claim recast by defendant as something other than tortious interference).

Therefore, Defendant's motion to dismiss as to standing will be denied.

**B.      Whether Plaintiff states a claim for Declaratory Judgment that Defendant violated the CARES Act**

Defendant claims it is entitled to dismissal as to both its tortious interference claim and its declaratory judgment claim because the "CARES Act is wholly inapplicable to the case at hand." (Doc. 6 at 8.)  In so arguing, Defendant makes the following related contentions: (1) under the CARES Act, a borrowing entity must "be current on its payments as of February 1, 2020," but here "the indebtedness was past due on February 1, 2020, which was admitted in writing by KM-T.E.H"; and (2) there was no statutory violation because "the financial hardship a borrower experiences must be related, directly or indirectly, to the COVID-19 pandemic," which was not true here because the First Demand Notice shows the financial issues related to the loan date back to September 2019.  This argument is without merit.

First, in the verified Complaint Plaintiff alleges KM-T.E.H. was current on its payments as of February 1, 2020, which could trigger the application of the CARES Act.  Second, in the verified Complaint Plaintiff alleges KM-T.E.H. made a written request under the CARES Act for a "forbearance due to a hardship as a direct result of the COVID-19 emergency," which Fannie Mae

8

disregarded. For purposes of this motion, brought under Rule 12(b)(6), the Court accepts that well-pleaded allegation as true.[3]

Therefore, Defendant's motion to dismiss for failure to state a claim will be denied.

## IV. CONCLUSION

After careful consideration, Defendant's motion to dismiss (Doc. 5) is **DENIED**.

**IT IS SO ORDERED.**

                                        s/ Roseann A. Ketchmark
                                        ROSEANN A. KETCHMARK, JUDGE
                                        UNITED STATES DISTRICT COURT

DATED: June 9, 2021

---

[3] In so ruling, the Court notes Defendant has attached numerous documents to its motion to dismiss. The Court did not consider those documents in determining whether dismissal was appropriate and declines to consider those documents at this stage. The Court nonetheless notes that certain provisions within these documents may be relevant at the summary judgment stage, including: KM-T.E.H.'s acknowledgment in the Forbearance Agreement that "Borrower has failed to pay all amounts due and owing under the Note" and "Borrower remains in default under the Loan Documents"; Section 4 of the Multifamily Note; Section 5(b)(1) of the Security Agreement; Section 7(a) (Moratorium Law" waiver) of the Security Agreement; Section 10(b) of the Forbearance Agreement; and Judge Youngs' March 20, 2020 Order appointing Trigild Inc. to serve as the general receiver of borrower.